IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:17-CV-62-D

| | |
|---|---|
| NORTH AMERICAN SPECIALITY INSURANCE COMPANY, ) ) ) | |
| Plaintiff, ) ) | |
| v. ) ) | **ORDER** |
| UNITED BUILDERS GROUP, LLC, ) J.E. DILLAHUNT & ASSOCIATES, INC., ) JIMMY E. DILLAHUNT, a/k/a ) JIMMY E. DILLAHUNT, SR., and ) JANIE B. DILLAHUNT, ) ) | |
| Defendants, ) ) | |
| v. ) ) | |
| JAMES DILLAHUNT, JR., CADET ) CONSTRUCTION COMPANY, INC., ) and ENEMOS, INC., ) ) | |
| Third-Party Defendants. ) | |

On February 2, 2017, North American Speciality Insurance Company ("NAS" or "plaintiff") filed a complaint seeking damages and equitable relief against United Builders Group ("UBG"), J.E. Dillahunt & Associates, Inc. ("JED"), James E. Dillahunt, Sr. ("Senior"), and Janie B. Dillahunt ("Dillahunt", collectively, "defendants") in connection with a dispute arising out of a surety bond indemnification agreement [D.E. 1]. On July 20, 2018, NAS moved for partial summary judgment against defendants [D.E. 55]. On August 17, 2018, JED and Senior filed a response, which noted that JED and Senior would "not be filing a response in opposition to [NAS]'s Motion for Partial Summary Judgment." [D.E. 59]. On August 20, 2018, UBG responded in opposition [D.E. 61]. NAS did not

reply. As explained below, the court grants NAS's motion for partial summary judgment.

I.

NAS issues surety bonds for construction projects in North Carolina. See Compl. [D.E. 1] ¶ 9; [D.E. 55-1] ¶¶ 6–7. UBG is a general contractor and obtained NAS surety bonds for its construction projects. See [D.E. 1] ¶¶ 2, 10–11; [D.E. 55-1] ¶ 8. To procure the required surety bond from NAS, the defendants entered into a written agreement to indemnify NAS for losses it sustained under these bonds. See [D.E. 1] ¶¶ 11–12; [D.E. 1-2]; [D.E. 55-1] ¶ 9.[1] NAS alleges that it issued eight surety bonds to UBG in reliance on the indemnity agreement. See [D.E. 1] ¶ 15; [D.E. 55-1] ¶ 13.

UBG contracted with subcontractors and suppliers to provide labor and materials for its projects. See [D.E. 55-1] ¶ 14. At some time after the projects began, "NAS started to receive claims from subcontractors and suppliers . . . that provided labor or materials [to UBG], but whom had not been paid by UBG." Id. NAS requested that the defendants defend NAS against the claims or indemnify NAS. See id. The defendants failed to defend NAS or indemnify NAS. See id. NAS investigated the claims and NAS's liability under the bonds, and NAS paid all claims it found to be

---

[1] In relevant part, the indemnity agreement provides:

> The Indemnitors will exonerate, hold harmless, and indemnify the Surety from and against any and all liability, loss, costs, damages, fees of attorneys and consultants, and other expenses, including interest, which the Surety may sustain or incur by reason of, or in consequence of, the execution of such bonds and any renewal, continuation or successor thereof, including but not limited to, sums paid or liabilities incurred in settlement of, and expenses paid or incurred in connection with claims, suits, or judgments under such bonds, expenses paid or incurred in enforcing the terms hereof, in procuring or attempting to procure a release from liability, or in recovering or attempting to recover losses or expenses paid or incurred, as aforesaid.

[D.E. 55-2] 42; [D.E. 55-1] ¶ 10.

2

reasonable and made in good faith. See id. ¶ 15. In total, NAS paid 33 claims totaling $1,112,137.68. See id. ¶ 16.

On or about February 12, 2014, NAS and UBG entered into a "Funds Control Agreement" ("FCA") designed to "provide a structure for funds from the ... obligees to be paid into an account monitored and controlled by NAS." [D.E. 55-1] ¶ 17; see [D.E. 1] ¶ 17; [D.E. 1-4]. On March 4, 2014, NAS demanded indemnity from UBG under the indemnity agreement and demanded that defendants deposit $1,300,000.00 as collateral with NAS to cover NAS's claim loss. See [D.E. 1] ¶ 18; [D.E. 1-6]; [D.E. 55-1] ¶ 18. NAS later recovered part of its claim loss, $178,455.00, after NAS hired a construction consultant to complete a renovation project. See [D.E. 55-1] ¶ 19. Additionally, NAS offset part of its loss by applying the remaining funds, $7,345.00, from the FCA. See id. ¶ 17. In total, NAS's net claim loss was $926,337.68. See id. ¶ 20; [D.E. 55-3] 11. On July 20, 2018, NAS moved for partial summary judgment to collect the net claim loss from the defendants [D.E. 55].

II.

Summary judgment is appropriate when, after reviewing the record as a whole, the court determines that no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247–48 (1986). The party seeking summary judgment must initially demonstrate the absence of a genuine issue of material fact or the absence of evidence to support the nonmoving party's case. Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986). Once the moving party has met its burden, the nonmoving party may not rest on the allegations or denials in its pleading, Anderson, 477 U.S. at 248–49, but "must come forward with specific facts showing that there is a genuine issue for trial." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (emphasis and quotation omitted). A trial court reviewing a motion for summary judgment should determine whether a genuine issue

3

of material fact exists for trial. Anderson, 477 U.S. at 249. In making this determination, the court must view the evidence and the inferences drawn therefrom in the light most favorable to the nonmoving party. Scott v. Harris, 550 U.S. 372, 378 (2007).

A genuine issue of material fact exists if there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. Anderson, 477 U.S. at 249. "The mere existence of a scintilla of evidence in support of plaintiff's position [is] insufficient . . . ." Id. at 252.; see Beale v. Hardy, 769 F.2d 213, 214 (4th Cir. 1985) ("The nonmoving party, however, cannot create a genuine issue of material fact through mere speculation or the building of one inference upon another."). Only factual disputes that affect the outcome under substantive law properly preclude summary judgment. See Anderson, 477 U.S. at 248.

NAS argues that it is entitled to recover its net claim loss, $926,337.68, from defendants based on the written indemnity agreement. See [D.E. 55-3] 7–12. Senior and JED did not respond in opposition to NAS's motion. See [D.E. 59]. In UBG's response, UBG asserts that it is "winding down and has no assets," claims to be "judgment proof," and argues that "NAS did not take necessary steps to . . . mitigate [its] losses." [D.E. 61] 1–2 (quotation omitted). UBG does not contest that it entered into a written indemnity agreement. See id.

"Suretyship involves a contractual relationship whereby one party, the surety, agrees to be answerable for the debt or performance obligation of another, the principal." In re New Bern Riverfront Dev., LLC, 521 B.R. 718, 723 (Bankr. E.D.N.C. 2014); see Branch Banking & Tr. Co. v. Creasy, 301 N.C. 44, 52, 269 S.E.2d 117, 122 (1980); New Amsterdam Cas. Co. v. Waller, 233 N.C. 536, 538, 64 S.E.2d 826, 828 (1951). Under North Carolina law, a surety may seek indemnification from its principal for any losses incurred as part of the contractual relationship. See, e.g., Cont'l Cas. Co. v. Funderburg, 264 N.C. 131, 134, 140 S.E.2d 750, 752–53 (1965). The parties have entered into

4

a valid indemnity agreement. See [D.E. 1-2]; cf. Schenkel & Shultz, Inc. v. Hermon F. Fox & Assocs., P.C., 362 N.C. 269, 273–75, 658 S.E.2d 918, 921–22 (2008). Moreover, defendants either do not contest NAS's motion or have not produced sufficient evidence to create a genuine issue of material fact. Cf. Anderson, 477 U.S. at 248 ("[A] party opposing a properly supported motion for summary judgment may not rest upon the mere allegations or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial." (quotation and alteration omitted)). Accordingly, the court grants NAS's motion for partial summary judgment. Cf. Fid. & Deposit Co. of Md. v. Bristol Steel & Iron Works, Inc., 722 F.2d 1160, 1162–66 (4th Cir. 1983).

III.

In sum, the court GRANTS NAS's motion for partial summary judgment [D.E. 55].

SO ORDERED. This 21 day of December 2018.

JAMES C. DEVER III
United States District Judge

5